**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARK DESO,**

                              **Plaintiff,**

    vs.                                                           **09-CV-1053**
                                                                         **(MAD/GHL)**

**CSX TRANSPORTATION, INC.,**

                                **Defendant.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

COFFEY KAYE MYERS and OLLEY        Lawrence A. Katz, Esq.
718 Two Bala Plaza
Bala Cynwyd, Pennsylvania 19004
*Attorneys for Plaintiff*

FLYNN & WIRKUS, P.C.                       John E. Young, Esq.
400 Crown Colony Drive
Suite 200
Quincy, Massachusetts 02169
*Attorneys for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.**      **INTRODUCTION**

      Plaintiff brings the within action seeking damages for personal injuries allegedly sustained when he slipped and fell on a locomotive floor while working as a conductor for defendant CSX Transportation, Inc. ("CSX") . Presently before the Court is plaintiff's motion for partial summary judgment pursuant to the Federal Locomotive Inspection Act, 49 U.S.C. § 20701. (Dkt. No. 26).  Defendant has opposed the motion.  (Dkt. No. 29).

## II. FACTUAL BACKGROUND[1]

On April 10, 2009, plaintiff was working as a conductor on the CSX River Line in Upstate New York. The train, that is the subject of this lawsuit, was on Track #11 at the Selkirk Yard and was ready to proceed to Port Newark, New Jersey. The train had two locomotive units that were running and connected to other cars. Plaintiff arrived at the train at approximately 8:30 p.m. with his engineer, Andy Ferraioli.

Plaintiff testified that he boarded the first locomotive unit and discovered that there was no handset on the conductor's side of the cab. Plaintiff exited the first unit and walked along the catwalk on the right side of the train to the second unit (#5231). Ferraioli remained in the first unit. Plaintiff testified that the catwalk was wet and that it was raining and dark. Plaintiff boarded #5231 through the rear door and testified that the interior cab lights were not illuminated. Plaintiff testified that the street lights and outdoor lights were bright enough and allowed him to see the control stand but admitted that he could not see the floor of the interior of the locomotive. Plaintiff testified as follows:

> Q. Was the locomotive dark when you walked into it?
> A. No. It was right outside where they park them, the swap out, there's a streetlight - - where they swap out crews. And also, walking on the catwalk, the outside lights were bright enough to see walking down the catwalk.
> Q. Could you see the floor of the interior of the cab?
> A. No.

Plaintiff's Deposition Transcript, at p. 51-52.

---

[1] The record herein contains few undisputed facts. The background set forth in this section is taken from: (1) Plaintiff's Statement of Material Facts; (2)Defendant's Statement of Material Facts; (3) the exhibits and evidence submitted by plaintiff in support of the Motion for Partial Summary Judgment; and (4) the exhibits and evidence submitted by defendant in opposition to the Motion for Partial Summary Judgment. The facts recited are for the relevant time period as referenced in the complaint. The Court notes that the background information is incomplete as the parties annexed only partial transcripts from various depositions.

The light switches for the interior lights were on the back of the engineer's stand. Plaintiff walked to the control stand where he found and retrieved a handset from the conductor's side of the engine with his left hand.  Plaintiff testified that he stepped with his right foot towards the control stand so that he could turn on the interior lights.  As he took that step, plaintiff claims that his right foot went out from under him, he fell forward and down three steps landing on his lower back.  However, plaintiff was able to turn on the lights before he fell. When plaintiff attempted to get up, he noticed a black plastic bag wrapped around the toe of his boot.  Plaintiff did not see the plastic bag before he fell.  Plaintiff testified as follows:

> Q. How can you be sure that the bag that was around your toe is what caused you to fall?
> A. Well, because it was on my foot after the fall.  And when my foot went out from underneath me, it was like it was on ice.  Slippery.
> Q. So, taking all that, you put that together and presumed that the thing wrapped around your toe was what caused you to fall?
> A. Yes.
> Q. But you don't know for sure, do you?
> A. That was what was on my foot.
> Q. So could you state with certainty that that's what caused you to fall?
> A. Not for certain.

Plaintiff's Deposition Transcript at p. 105-06.

Ferraioli testified that plaintiff radioed for him to come to the second unit.[2]  Upon arriving, plaintiff told Ferraioli that he hurt his back when he slipped on a black plastic bag.  Plaintiff showed Ferraioli the black plastic bag.   While in the second unit, Ferraioli made no observations with respect to the floor of the interior of the locomotive.  Ferraioli walked with plaintiff back to the first locomotive unit and remained there for ten minutes until Trainmaster Robert Viti arrived. Plaintiff claims that he showed the plastic bag to Viti.  However, Viti testified that while plaintiff

---

[2] The record does not indicate how much time elapsed between when plaintiff left the first unit and when plaintiff radioed for Ferraioli to come to the second unit.

told him that he slipped in the second unit on a plastic bag, plaintiff did not show him the subject bag. Viti took plaintiff to the hospital.[3] Plaintiff did not retain the bag and could not recall when or where he disposed of the bag.

At the time of the incident, Fred Buthe was the Assistant Superintendent of the CSX service center. Mr. Buthe was responsible for the "flying squad" which performed calendar day inspections of the locomotives. On the day of the incident, Ed Jubrey and Joel McClellan were on the flying squad that Buthe supervised. After learning of plaintiff's accident, Buthe took statements from Jubrey and McClennan. Buthe testified that in the normal course of business, statements are taken when an incident occurs. Buthe witnessed both statements but did not recall when they were taken. Jubrey stated that the squad performed a daily inspection of the subject train at 1730:

> Engine 5231 had low water in sight glass which was also reported to fuel plant. I went through the cab and finished my inspection off [sic] all cab lights and devices and signed the inspection booklet. Went back to the leader to meet up with partner in leader removed garbage from cab replaced first aid kit. Cleared up blue signal protection and reported clear of track and power. Walked into nose of 5231 to inspect lights and toilet did not notice any debris in cab or stairs.

Later that same evening, Buthe inspected the subject locomotive with Wayne Deyo, a CSX Trainmaster, and plaintiff's supervisor, Dan Puckett, a road foreman. Buthe testified that Fred Schramm, another superintendent, was also present.[4] During the inspection, Buthe made visual observations of the locomotive, trash and lights. However, Buthe did not recall specifically looking for a trash bag or the source of any bag. Puckett testified that he prepared an email

---

[3] Viti testified that he did not return to the yard at all that evening.

[4] Buthe testified that there were other employees present during the post-accident inspection however, he could not recall their names.

4

regarding the inspection.[5] Puckett stated that he did not find any garbage bags or anything out of the ordinary in the locomotive.

Wayne Deyo was primarily responsible for the preparation of the CSX Accident Report regarding plaintiff's accident.[6] The Report includes a Table of Contents which lists the following documents as part of the report: General Information, Locomotive Info, Statements, CJ-24[7], PI-1 (Personal Injury/Occupational Illness Report), Photos and Employee History.[8] Mr. Deyo testified that he prepared a summary of the incident entitled M.J. Deso (935778) Personnal [sic] Injury, April 10, 2009 and the P1-1. The summary provided:

> Mr. Deso reported for duty as the conductor on Q11209 at 2000 hrs. at the Selkirk GYO.[9] Mr. Deso was transported to his train along with engineer A. S. Ferraioli to track 11 receiving yard via yard jitney.
>
> At approximately 2045 Mr. Deso notified the hump yardmaster that he needed to speak to the trainmaster. The yardmaster asked Deso if he needed medical attention and Mr. Deso replied "I don't know yet". Trainmaster R. Viti responded to the scene and Mr. Deso was leaning with both hands against the ladder of the lead unit CSXT 7358. Mr. Deso told TM Viti that he had slipped on the inside steps on a black plastic bag on the second unit (CSXT 5231) of his [sic] consist while

---

[5] A copy of the email and portions of Puckett's deposition testimony were provided by defendant. However, Mr. Puckett did not authenticate the email because a hard copy was not produced during his deposition.

[6] On the motion, both parties annexed a copy of a document entitled "CSX Transportation, Albany Division, FRA Reportable Injury Investigation Report". The parties also provided portions of Wayne Deyo's deposition transcript. Mr. Deyo was involved in the preparation of the report and provided testimony while reviewing the report during his examination before trial. The entire report has not been properly authenticated, however the parties do not object to its admissibility. Thus, the Court will consider the report in the context of the within motion. *See Livingston v. Griffin*, 2007 WL 1500382, at *2, n. 2 (N.D.N.Y. 2007) (citing *H. Sand & Co. v. Airtemp Corp.*, 934 F.3d 93, 100 (2d Cir. 1991)).

[7] The CJ-24 is a Physician's Initial Report of Injury or Illness. This report was not authenticated and is not in proper, admissible form.

[8] The CSX Report also contains a document entitled Inspection of Locomotive in Connection with Personal Injury. The report is dated April 10, 2009. Deyo did not prepare the report and indicated he was not familiar with the report. Bluthe testified that this report was prepared by Fred Schramm. The report has not been properly authenticated and is not in proper admissible form.

[9] The record does not indicate the full definition of the abbreviation "GYO".

5

> he was going back to release hand brakes and get a hand set for the radio.
>
> Mr. Deso complained of back pain and promptly requested medical attention by telling Trainmaster Viti that he "wanted to have it looked at".
>
> Conductor Deso was transported to St. Peter's Hospital in Albany, New York. The Engine was looked at by Trainmaster Deyo and RFE Puckett and no issues were taken with the Locomotive. The Employee was given Motrin and a Prescription for Norco.

Mr. Deyo testified that he received information for his report from the plaintiff's Employee's Injury and/or Illness Report (P1-1A) prepared by plaintiff.[10] Mr. Deso executed the report on April 12, 2009. A copy of that report is included in the CSX Report. In the P1-1A, plaintiff stated:

> Called for Q11204 @ 2000hrs went through power to get handset for conductors side on lead unit. While removing handset slipped on black plastic bag on floor lost footing and fell down 3 steps landing on back.

Plaintiff indicated that he did not have a safe place to work because "engine cab had debris on floor". Plaintiff also stated, "no lights on in cab" and "no witness" to the accident.

On April 12, 2009, Deyo prepared the P1-1 with information he received from either Viti or Puckett. In the section of the report entitled, "Describe Factors Associated With Case", Deyo provided:

> employee reports that he slipped on a black plastic [sic] bag while desinding [sic] locomotive stairs ont [sic]e [sic] CSXT 5231.

Deyo also noted "human factor" as a possible cause and testified that "plaintiff was responsible to watch where he was going to avoid accidents".

---

[10] The portions of Mr. Deso's transcript that are included in the record do not contain any testimony regarding this report. The Court will consider the report in the context of the motion as both parties provided the report as an exhibit and have not objected to its authenticity.

6

### III. DISCUSSION

#### A. Standard on Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id*. If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id*.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen 'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

#### B. The Federal Employers Liability Act and Locomotive Inspection Act

The Federal Employers' Liability Act ("FELA") provides . . . "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C.A. § 51. FELA mandates that an employer shall provide its employees, "with a reasonably safe place to work, and this includes the duty to maintain and inspect work areas". *Derienzo v. Metro. Transp. Auth.*, 237 F. App'x 642, 645 (2d Cir. 2007) (citing *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993)).

"FELA adopts a relaxed standard for both negligence and causation". *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 700 (2d Cir. 2010) (citing *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 58 (2d Cir. 1996)). Further, "the right of the jury to decide issues of fact should . . . be liberally construed". *Id.* Under FELA, "[a]n employer may be held liable . . . for risks that would be too remote to support liability under common law". *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006). However, a plaintiff, "must offer some evidence that would support a finding of negligence" and must demonstrate "reasonable foreseeability". *Id.* (quoting *O'Hara v. Long Island R.R.*, 665 F.2d 8, 9 (2d Cir. 1981)); *Dereinzo*, 237 F. App'x at 645; *see also Decker v. Long Island R.R.*, 2011 WL 1260229, at *2 (E.D.N.Y. 2011) (holding that a plaintiff must satisfy the elements of common law negligence - duty, breach, causation and damages). FELA is not a strict liability statute and the fact that the plaintiff is injured is not proof of negligence. *Williams*, 196 F.3d at 406.

The Locomotive Inspection Act ("LIA")[11] is an amendment to FELA and provides:

---

[11] The LIA was formerly known as the Boiler Inspection Act.

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances–
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701; *Urie v. Thompson*, 337 U.S. 163, 189 (1949).[12]

The LIA, "dispense[s] . . . with the necessity of proving that violations of [] safety statutes constitute negligence; and [] proof of such violations is effective to show negligence as a matter of law". *Id*. "Proof that the defendant violated the LIA establishes FELA negligence *per se*." *Traylor v. Metro-North Commuter R.R.*, 2002 WL 31319923, at *2 (S.D.N.Y. 2002) (citing *Urie*, 337 U.S. at 189); *see also Morant v. Long Island R.R.*, 66 F.3d 518, 523 (2d Cir. 1995) ("[i]t is well-settled that FELA requires a finding of negligence *per se* when there has been a violation of a safety statute specifically aimed at the railroad industry"). "Under a negligence *per se* theory, if a plaintiff proves that a statutory violation has occurred, he need not prove the traditional negligence elements of foreseeability, duty and breach". *Capriotti v. Consol. Rail Corp.*, 878 F.Supp. 429, 434 (N.D.N.Y. 1995) (citing *Moody v. Boston and Maine Corp.*, 921 F.2d 1, 4 (1st Cir.1990)). However, the plaintiff is still required to prove causation. *Id*. Typically, issues presented under the LIA create questions of fact for a jury. *Id*. (citations omitted).

**1.     49 C.F.R. § 229.119(c)**

---

[12] Liability under the LIA only exists where the locomotive at issue was "in use" at the time of the accident. *Crockett v. Long Island R.R.*, 65 F.3d 274, 277 (2d Cir. 1995). Here, the parties do not dispute that the subject locomotive was "in use".

In this case, plaintiff moves for summary judgment relying solely upon the argument that a federal regulation was violated and that the violation is, "an automatic and *per se* violation of the LIA".[13]   Plaintiff claims that defendant violated 49 C.F.R. § 229.119(c) which provides:

> Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard.  Floors shall be properly treated to provide secure footing.

49 C.F.R. § 229.119(c).

The question of what constitutes a tripping hazzard, in the context of foreign objects, has been debated and discussed in several Circuit and district courts.  In *McGinn v. Burlington N. R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996), the plaintiff tripped and fell on his own luggage in the engine cab of a locomotive.  The Seventh Circuit granted summary judgment in favor of the defendant and held that, "49 C.F.R. § 229.119(c) imposes liability for failure to repair objects of which the engine cab is comprised, such as protruding floor boards or bolts that may create a tripping hazard.  The regulation does not encompass a crew member's luggage".  *Id*. at 300.

The majority of district and appellate courts have rejected such a narrow interpretation of the LIA.  For example, in *Topping v. CSX Transp., Inc*., 1 F.3d 260, 261 (4th Cir. 1993), the plaintiff slipped and fell on a loose metal object that was not a part of the train. CSX argued that the plaintiff's accident did not arise out of a violation of the Act, because the plaintiff slipped on an object that was not a part of the train.  *Id*.  The Fourth Circuit disagreed and held that the railroad must keep the locomotive clear of "dangerous objects or foreign matter":

> The Act without limitation speaks of equipment in proper condition and safe to operate ... without unnecessary peril to life or limb.

---

[13]   In response to defendant's opposition, plaintiff argues that there are "two ways to prove a violation of the LIA".  Plaintiff asserts that he is moving for partial summary judgment based solely upon the violation of a federal regulation.  Accordingly, the Court will confine its analysis to whether CSX violated the LIA due to a violation of 49 C.F.R. § 229.119(c).

10

> Conditions other than mechanical imperfections can plainly render equipment unsafe to operate. It seems to us a classic jury question whether the presence of the loose metal object rendered the locomotive cab "unsafe to operate." We see no basis for reading CSX's limitation into the Act.

*Id.* (internal citations and quotation marks omitted).

Similarly, in *Reed v. Norfolk S. Ry. Co.*, 312 F.Supp.2d 924, 928-29 (N.D. Ohio 2004), the plaintiff was injured when he tripped and fell over a box of bottled water. The defendant claimed that since the box of water was not attached or otherwise integrated or affixed to the cab floor, the plaintiff could not sustain a claim under § 229.119(c). The district court disagreed and held:

> In the instant case, NSRC has not established that the box of bottled water on which Plaintiff tripped belonged to Reed or that Plaintiff had brought on it on board. Under these circumstances, Reed is not required to prove that the bottle of water is an "integrated" part of the crew cab, and neither *McGinn* nor *Lunsford*[14] proscribe Reed's claim. It is clear that "[c]onditions other than mechanical imperfections can plainly render equipment unsafe to operate without unnecessary peril to life or limb." Defendant is therefore not entitled to summary judgment on Reed's claim under Count II pursuant to § 229.119(c).

*Id.* (internal citations omitted).

While a carrier's duty under the LIA may extend to foreign objects that are not affixed or part of the train, on a motion seeking summary judgment, the plaintiff must establish that the foreign object was present on the floor of the cab with uncontroverted facts. *See Haworth v. Burlington N. and Santa Fe. Ry. Co.*, 281 F.Supp.2d 1207, 1213-14 (E.D. Wash 2003) (three of the defendant's employees admitted that an air hose was present on the floor where the plaintiff fell; the court held that the air hose constituted a tripping hazzard and awarded summary judgment to the plaintiff on the issue of liability); *see also Jarrett v. CSX Transp., Inc.*, 2008 WL 4239148

---

[14] In *S. Ry. Co. v. Lunsford*, 297 U.S. 398 (1936), the Supreme Court held that, "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute. But mere experimenal [sic] devices which do not increase the peril, but may prove helpful in an emergency, are not."

11

(N.D. Ohio 2008) (the court awarded partial summary judgment finding the defendant strictly liable for the plaintiff's injuries after the plaintiff presented not only uncontradicted testimony that an air hose was present but also provided evidence including the defendant's post-inspection reports which corroborated his account of the events); *see also Kehdi v. BNSF Ry. Co.*, 2007 WL 2994600, at *4 (D. Or. 2007) (the plaintiff established that the defendant violated the LIA with uncontradicted evidence that oil or some other slippery residue was on the floor of the compression room including photographs that clearly depicted a substance on the floor and the defendant's post accident inspection report that confirmed the existence of "residue" on the floor); *see also Withrow v. CSX Transp., Inc.*, 2008 WL 5101150, at *4 (S.D. Ohio 2008) (the plaintiff presented uncontradicted testimony that he slipped on oil with photographs showing oil on the walkway and footprints on numerous steps).

If a plaintiff cannot establish the absence of a question of fact as to whether the substance or object was present and caused the fall, the motion for summary judgment must be denied. *See Hansen v. Burlington N.*, 2005 WL 1388727, at *1 (E.D. Cal. 2005) (the plaintiff testified that he did not observe oil on walkway immediately before he slipped and an inspection of the area after the plaintiff's accident did not reveal any slip or boot markings). In *Lochridge v. City of Tacoma*, 2010 WL 1433412, at *5 (W.D. Wash. 2010), the plaintiff slipped and fell on oil and moved for partial summary judgment seeking a finding, as a matter of law, that the defendant was liable under FELA. *Id.* In support of the motion, the plaintiff provided his deposition transcript, photographs and the defendant's internal reports. *Id.* at *4. In opposition to the motion, the defendant presented affidavits from four mechanics who inspected the subject locomotive after the plaintiff's fall and found no oil on the walkways or floor of the locomotive cab. *Id.* at *5. The defendant also presented evidence that the plaintiff's boots were inspected after the fall and contained no evidence of any oil or other liquid. *Lochridge*, 2010 WL 1433412, at *2. The

record also included testimony from the plaintiff's co-workers who were at or near the scene of the incident and testified that they could not recall the plaintiff informing them that liquid caused his fall. *Id*. at *5. Based upon the disputed record, the Court denied the plaintiff's motion holding that, "[there] are issues for a fact finder to resolve, not the Court." *Id*. at *6.

Here, plaintiff claims that the plastic bag constituted an "obstruction that create[d] a slipping [or] tripping hazzard in violation of 49 C.F.R. § 229.119(c). Plaintiff argues, that, "all the evidence leads to the sole conclusion that plaintiff's accident was caused by a plastic bag located on a locomotive floor" and further, that "[t]he issue is not how the bag got on the floor" or the source of the bag, rather, "the presence of the black plastic bag on the locomotive floor was a slipping hazard prohibited by § 229.119(c), whether it came from a crew pack, the cleaning crew or any other source". In opposition, defendant argues that the mere presence of foreign material does not create a violation of the LIA. Moreover, defendant contends that there is an issue of fact as to whether the plastic bag existed and even if it did, whether it was in the area or caused plaintiff's fall. Defendant contends that plaintiff improperly relies solely upon his own self serving testimony in support of the motion.

While plaintiff correctly asserts that a violation of a federal regulation is a *per se* violation of the LIA, plaintiff oversimplifies his burden of proof on the motion for summary judgment. Plaintiff's conclusory assertion, i.e., that the "lay evidence results in the uncontradicted conclusion that CSX violated the LIA because there was a black plastic bag on the locomotive floor" is not supported by the record. Indeed, a review of the parties submissions reveals that nearly every material fact is disputed by the parties.

Plaintiff acknowledges that the accident was unwitnessed. Moreover, plaintiff concedes that upon entering the subject locomotive, he could not see the floor. Plaintiff admits that he did not see the subject plastic bag **at any time** prior to the accident and further testified that he "could

13

not be certain" that the plastic bag caused his fall. Plaintiff first noticed the plastic bag after he slipped and fell. Ferraioli's testimony, while seemingly favorable to plaintiff, is inadequate for the purposes of plaintiff's motion. Ferraioli testified that plaintiff showed him a black plastic bag. However, plaintiff did not show or explain to Ferraioli exactly where the bag was located prior to the accident. Ferraioli did not go to the second unit at any time that evening, prior to plaintiff's accident, and only observed the area **after** plaintiff fell. *See Hansen*, 2005 WL 1388727, at *1 (the deposition testimony of a co-worker who observed the plaintiff after the accident was not direct evidence that oil caused the plaintiff to fall). Ferraioli admitted that he did not recall seeing any trash or debris while he was present in the second unit. Finally, both plaintiff and Ferraioli testified that it was raining, wet and dark at the time of the accident.

In further support of the motion, plaintiff provided a "Preliminary Report" by Michael J. O'Brien, a Motive Power & Equipment Specialist. Mr. O'Brien's report does not constitute direct evidence as he makes conclusions based upon the same facts that are disputed by the parties herein. Accordingly, as the report does not clarify the issues raised in the within motion, it carries little weight. *See Cowden v. BNSF Ry. Co.*, 738 F.Supp.2d 932, 939 (E.D. Mo. 2010) (the plaintiff's expert stated in his expert report that the defendant violated numerous regulations, but his opinions were entirely conclusory and insufficient to raise a genuine issue of material fact). Plaintiff also provided excerpts from the transcript of the deposition of Mark S. Krajewski, a CSX engineer. Mr. Krajewski did not witness the accident. The Court has reviewed his testimony and finds that his opinions are conclusory and unpersuasive for the purposes of the summary judgment motion.

Moreover, in opposition to the motion, defendant provided evidence and testimony which contradicts plaintiff's admissible evidence including deposition testimony from defendant's

employees who inspected the area both prior and subsequent to the accident and reports detailing CSX's investigation of the incident.  This evidence does not corroborate plaintiff's version of the events but rather, demonstrates that there are genuine issues of fact for a jury to resolve.  On a motion for summary judgment, it is improper for the court to weigh the credibility of the witnesses.  *Nelson v. Metro-North Commuter R.R.*, 235 F.3d 101, 104 (2d Cir. 2000).  "It is particularly wrong to base a summary judgment on the deposition of an interested party on facts . . . known only to him".  *Rivera v. Union Pac. R. Co.*, 868 F.Supp. 294, 299 (D. Colo. 1994) (citation omitted) (the plaintiff was the sole eyewitness to a slip and fall on a brake valve handle on the floor of the locomotive, therefore the court denied plaintiff's request for summary judgment on the issue of whether the defendant was liable under the BIA).  Here, the Court cannot resolve the factual discrepancies without weighing the credibility of the witnesses or determining the amount of weight accorded to each account of the incident.

Upon a review of the record herein, the Court finds that plaintiff has not established the absence of a material issue of fact with respect to defendant's liability.  Plaintiff's admissible evidence is insufficient to enable this Court to conclude, as a matter of law, that the subject black plastic bag caused plaintiff to fall.  Viewing the evidence in a light most favorable to the non-movant, as the Court must do on a motion for summary judgment, the Court finds that there is a genuine issue of fact as to whether the black plastic bag was on the floor of the subject locomotive in the area where plaintiff allegedly fell.  Accordingly, plaintiff's motion for partial summary judgment is DENIED.[15]

---

[15] In opposition to the motion, defendant also argues that the defense of contributory negligence is available under the LIA if the employee's negligence was the sole cause of the accident.  Whether plaintiff was the sole cause of his injury is a question of fact for a jury. *See Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir.1992) ( "[p]roof that the employee's own negligence was the sole cause of his or her injury is a valid defense because it eliminates the possibility that the regulatory violation contributed in whole or part to the injury").
Here, plaintiff has failed to establish that defendant violated 49 C.F.R. § 229.119(c) and that this violation resulted in a violation of the LIA. Accordingly, this Court makes no determination or conclusion with respect to defendant's

**2.      Causation**

Under a FELA negligence *per se* theory, if a plaintiff proves that a statutory violation has occurred he need not prove the traditional negligence elements of foreseeability, duty and breach, but he is still required to prove causation. *Capriotti*, 878 F.Supp. at 434 (citing *Moody*, 921 F.2d at 4). To prove liability under the LIA, the plaintiff must establish that defendant was negligent and that the injuries were proximately caused by the defendant's negligence. *See Carrico v. CSX Transp., Inc.*, 2009 WL 2508219, at *2, n.1 (S.D. Ind. 2009) (the plaintiff argued that he was entitled to a ruling that the defendant was negligent as a matter of law but failed to mention (or submit evidence regarding) causation in his brief); *see also Riley v. Union Pac. R.R. Co.*, 2010 WL 1929623, at *3 (E.D. Okla. 2010) (the element of causation is an essential part of the plaintiff's claim under the LIA and thus the plaintiff must demonstrate, "the final requirement of the claim is proof that the injuries sustained were caused by the violation of the LIA and its associated regulations"). The plaintiff has the lightened burden of establishing that the employer's negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006) (citing Rogers, 352 U.S. at 506); *see also Zimmerman v. Long Island R.R.*, 2 F. App'x 172, 175 (2d Cir. 2001) (holding that the plaintiff is "not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act." (quoting 45 U.S.C. § 51).

In this matter, plaintiff has presented no argument regarding causation. Instead, plaintiff argues that summary judgment is appropriate on the issue of liability without a determination on

---

assertion that plaintiff was the sole proximate cause of the accident.

causation.[16]  Plaintiff cites to no authority in support of his position.  Based upon the aforementioned case law, even assuming that plaintiff could establish that defendant's conduct violated §229.119(c), for an award of a motion for summary judgment, plaintiff must also prove that the subject violation was the proximate cause of his injuries.  Here, the Court is constrained to conduct any analysis on this issue as plaintiff has failed to discuss causation in his moving papers.  Thus, summary judgment is denied on this basis as well.

## IV.     CONCLUSION

Accordingly, it is hereby

**ORDERED** that plaintiff's motion for partial summary judgment (Dkt. No. 26) is **DENIED**; and it is further

**ORDERED** that a Settlement Conference is scheduled in this matter for June 2, 2011 at 10:00 A.M..  The parties are directed to appear at that time and make submissions in advance of the conference as directed in this Court's Order Setting Settlement Conference.

**IT IS SO ORDERED.**

Dated: May 16, 2011

_____
Mae A. D'Agostino
U.S. District Judge

---

[16] Plaintiff also disputes the appropriate legal standard on the causation issue but reserves argument on that issue until the time of trial.